UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GEORGE SCHOEDINGER, M.D. and )
SIGNATURE HEALTH SERVICES, INC., )
                                  )
        Plaintiffs,                )
                                  )
    vs.                            )    Case No.4:07CV904SNLJ
                                  )
UNITED HEALTHCARE OF THE          )
MIDWEST, INC.,                    )
                                  )
        Defendant.                 )

**MEMORANDUM AND ORDER**

The present cause of action is a continuation of a legal battle between the parties over the defendant's processing and payment of benefit claims by the plaintiffs. In 2006, plaintiffs sued defendant over defendant's processing of 295 benefits claims that plaintiffs, as assignees of plaintiff Schoedinger's patients, submitted to defendant for payment for medical services that plaintiff Schoedinger had provided. Plaintiffs had asserted that defendant had unpaid, underpaid, and wrongfully delayed payments for the 295 benefits claims.[1] In the instant action, the plaintiffs now seek payment for medical services provided and benefit claims arising after Schoedinger I was decided. This matter is before the Court on the defendant's motion to dismiss (as to plaintiffs' first amended complaint) 1) Counts II and III to the extent that these counts apply to benefit claims covered by ERISA; 2) Count II, ¶39 and Count III, ¶¶(a), (b) and (c) of the prayer for relief; 3) Count V (RICO) in its entirety; and 4) Count VIII (tortious interference with a business expectancy) in its entirety [31], filed June 1, 2010. All responsive pleadings have now been filed and the matter is ripe for disposition.

Defendant asserts that plaintiffs are seeking to revive certain claims that had previously been dismissed by the district court and/or the appellate court in *Schoedinger I*. Specifically,

---

[1]The parties refer to the 2004 action (4:04CV664SNL) and resulting district court and 8th Circuit Court of Appeals decisions collectively as "*Schoedinger I*". *See*, Schoedinger v. United Healthcare of the Midwest, 2006 WL 1391383 (Limbaugh, J. May 22, 2006); Schoedinger v. United Healthcare of the Midwest, 2006 WL 3803935 (Limbaugh, J. November 6, 2006); Schoedinger v. United Healthcare of the Midwest, 557 F.3d. 872 (8th Cir. 2009).

defendant contends that the plaintiffs are re-asserting their previously dismissed RICO cause of action (Count V), certain parts of their causes of action in Counts II and III alleging that defendant breached some independent contract with the plaintiffs, and their state law causes of action (Counts II and III) as to benefit claims covered by ERISA. Defendant further asserts that the plaintiffs' new cause of action for tortious interference with a business expectancy (Count VIII) fails to state a viable cause of action for several reasons, including but not limited to, plaintiffs' failure to allege that any patient terminated his/her business relationship with the plaintiffs due to the defendant's actions, that defendant cannot be liable for tortious interference with a business relationship which the plaintiffs have alleged exists between the parties, and that a certain number of the benefits claims are again covered by ERISA.

As to previously-dismissed claims of Counts II, III, and V, defendant contends that these claims are barred under the doctrines of *res judicata* and collateral estoppel. As Count VIII, defendant contends that this count should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiffs contend that Count V is not barred because it seeks relief for new claims arising since *Schoedinger I*. Plaintiffs further argue that "claim preclusion" is inapplicable because the Eighth Circuit had stated that "issue preclusion" was the appropriate theory for possible dismissal of the plaintiffs' RICO claim. As to "issue preclusion"as a basis for dismissing Count V, plaintiffs contend that a recent United States Supreme Court case, <u>Bridge v. Phoenix Bond & Indemnity Co.</u>, 128 S.Ct. 2131 (2008) renders issue preclusion inapplicable to the present cause of action. As to Counts II and III, plaintiffs appear to argue that some type of contract does exist between the parties; however, the exact nature of that "contractual relationship" is unclear. Furthermore, it appears that the plaintiffs have conceded that any benefit claims covered by ERISA should be dismissed as precluded. Finally, as to Count VIII, plaintiffs appear to "counter-argue" the existence of a contractual relationship between the parties; i.e. no contractual relationship, thus, defendant can be liable for tortious interference. They further argue that there is no ERISA preemption as to their tortious interference claim because ERISA preemption is only applicable to the plan itself, not the plan administrator.

2

After careful consideration of the matter, review of the parties' pleadings and relevant caselaw, the Court will grant the instant motion.

### Count V (RICO)

In *Schoedinger I*, the plaintiffs asserted a RICO claim against defendant (regarding the processing of 295 benefit claims) in their Second Amended Complaint, as follows:

> "Since April 15, 2003 . . . [defendant United Healthcare] engaged in or participated in a concerted effort designed to delay or deny full reimbursement to Plaintiffs. The enterprise has consisted of making false or misleading statements to Plaintiffs through the mail in its EOB forms which mislead or conceal the method in which the processing of payments is handled, and concealed the nature or method in which improper deductions have been taken from payments owed to Plaintiffs . . ."

*Schoedinger I*, Second Amended Complaint, Count VII [26], filed in Case No. 4:04CV664SNL. After hearing evidence on plaintiffs' claims, including plaintiffs' RICO claims, the district court granted a portion of the defendant's motion for judgment as a matter of law, and dismissed the plaintiffs' RICO claims for failure to state a *prima facie* case. Schoedinger v. United Healthcare of the Midwest, 2006 WL 1391383 (Limbaugh, J. May 22, 2006). The Eighth Circuit affirmed the district court's decision dismissing the plaintiffs' RICO claims. Schoedinger v. United Healthcare, 557 F.3d. 872, 877-79 (8th Cir. 2009).

In the present cause of action (hereinafter referred to as *Schoedinger II*), plaintiffs have virtually repeated, verbatim, their *Schoedinger I* RICO claim into Count V of their First Amended Complaint:

> "Since April 15, 2003 . . . [defendant United Healthcare] engaged in or participated in a concerted effort designed to delay or deny full reimbursement to Plaintiffs. The enterprise has consisted of making false or misleading statements to Plaintiffs through the mail in its EOB forms which mislead or conceal the method in which the processing of payments is handled, and conceal the nature or method in which improper deductions have been taken from payments owed to Plaintiffs. . ."

*Schoedinger II*, First Amended Complaint, Count V [30].

"Under the doctrine of res judicata, a judgment on the merits in a prior lawsuit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979); *see also*, Professional Management

3

Associates v. KPMG, LLP., 345 F.3d. 1030, 1032 (8th Cir. 2003); Lundquist v. Rice Memorial Hosp., 238 F.3d. 975, 977 (8th Cir. 2001); Costner, et. al. v. URS Consultants, 153 F.3d. 667, 673 (8th Cir. 1998); Landscape Properties, Inc. v. Whisenhunt; 127 F.3d. 678, 682 (8th Cir. 1997); United States v. Gurley, 43 F.3d. 1188, 1195 (8th Cir. 1994).  The application of the doctrine of *res judicata* has three requirements:  1) the prior judgment was rendered by a court of competent jurisdiction; 2) the prior judgment was a final judgment on the merits; and 3) the same cause of action and the same parties or their privies were involved in both cases. Lundquist,, at 977; DeLlano v. Berglund, et. al., 183 F.3d. 780, 781(8th Cir. 1999); Costner, at 673; Murphy v. Jones, 877 F.2d. 682, 684 (8th Cir. 1989), citing Headley v. Bacon, 828 F.2d. 1272, 1274 (8th Cir. 1987).  Even if a plaintiff raises a new legal theory of recovery in the second action, *res judicata* bars all claims that were or could have been raised in an earlier action. "Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action." Lundquist, at 977 *citing* Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981); *see also*, Ruple v. City of Vermillion, South Dakota, 714 F.2d. 860, 862 (8th Cir. 1983)("Absent special circumstances, all of the theories that a dismissed employee can bring to play to challenge the dismissal should be raised and decided in the same lawsuit."); Biermann v. United States of America, 67 F.Supp.2d. 1057, 1060 (E.D.Mo. 1999). "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action . . . the two cases are really the same `claim' or `cause of action' for purposes of *res judicata*." Ruple, at 861; *see also*, Landscape Properties, at 683 *citing* Ruple. The bottom line is whether the wrong for which redress is sought is the same in both actions. Costner, at 674 *citing* Gurley, at 1196.  However, *res judicata* does not apply to claims that did not exist when the earlier lawsuit was filed. Lundquist, at 977.  "[I]t is well settled that claim preclusion does not apply to claims that did not arise until *after* the first suit was filed."  Baker Group, L.C. v. Burlington Northern & Santa Fe Ry. Co., 228 F.3d. 883, 886 (8th Cir. 2000).

In diversity jurisdiction cases, the federal courts must determine the application of *res judicata* under the forum state's law of claim preclusion. Semtek Int'l v. Lockheed Martin Corp.,

4

531 U.S. 497 (2001). Under Missouri law, the doctrine of *res judicata* bars not only the reassertion of a cause of action that has been previously adjudicated between the same litigants, but also precludes parties from contesting matters that the parties have had a full and fair opportunity to litigate. Chesterfield Village, Inc. v. City of Chesterfield, Missouri, 64 S.W.3d. 315, 318-320 (Mo. 2002); Deatherage, et. al. v. Cleghorn, et. al., 115 S.W.3d. 447 (Mo.App. 2003); Patrick V. Koepke Construction, Inc. v. Woodsage Construction Co., 119 S.W.3d. 551 (Mo.App. 2003); Lomax v. Sewell, 50 S.W.3d. 804 (Mo.App. 2001). The doctrine of *res judicata* bars a claim if the following elements are satisfied: 1) identity of the thing sued; 2) identity of the cause of action; 3) identity of the persons or parties to the action; and 4) identity of the quality or status of the person for or against whom the claim is made. Deatherage, at 454; Patrick V. Koepke Construction, at 555; Lomax, at 809. To invoke *res judicata*, a final judgment on the merits must have been rendered involving the same claim or issue sought to be precluded in the second cause of action. Lomax, at 809. Finally, claim preclusion prevents reassertion of the same claim, even though additional evidence or different evidence or legal theories might be advanced to support the claim. Chesterfield Village, at 319-20. When making a determination of the application of *res judicata*, Missouri courts look to the factual bases for the claims, not the legal theories. Chesterfield Village, at 319-20.

The application of collateral estoppel in a diversity case is determined by state law. Royal Ins. Co. of America v. Kirksville College of Osteopathic Medicine, Inc., 304 F.3d. 804, 807 (8th Cir. 2002); Nanninga v. Three Rivers Electric Coop., 236 F.3d. 902, 906 (8th Cir. 2000). The doctrine of collateral estoppel is commonly considered to be a term which refers to "issue preclusion". Collateral estoppel is applicable to matters previously at issue which were directly and necessarily adjudicated. Lovell v. Mixon, 719 F.2d. 1373, 1376 (8th Cir. 1983) *citing* Montana v. United States, 440 U.S. 147 (1979). "Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Collateral estoppel does not require mutuality of parties as long as the party against whom it is used had a full and fair

5

opportunity and incentive to litigate the issue in the prior action. Lane v. Peterson, 899 F.2d. 737, 741 (8th Cir. 1990); Sanders v. Frisbee, 736 F.2d. 1230, 1232 (8th Cir. 1984); see also, Munz v. Robert G. Parr, et.al., 972 F.2d. 971 (8th Cir. 1992). This bar includes not only claims/issues actually litigated, but also claims/issues that could have been raised in the previous action.

The Full Faith and Credit Statute, 28 U.S.C. §1738, requires federal courts to give the same preclusive effect to a state court judgment as would the state's own courts. *See*, Migra v. Warren City School District Bd. of Educ., 465 U.S. 81 (1984); Brown v. St. Louis Police Dept., et. al., 691 F.2d. 393, 395 (8th Cir. 1982). Missouri law provides that prior judgments involving the same issue(s) are conclusive. Callahan v. Board of Probation and Parole, 720 S.W.2d. 445 (Mo.App. 1986).

In Missouri, under the doctrine of collateral estoppel, four criteria must be met before a determination in the first action is preclusive in the second action: 1) the issue decided in the prior adjudication is identical to the issue in the present action; 2) the prior adjudication resulted in a judgment on the merits; 3) the party against whom collateral estoppel is asserted was a party to the prior adjudication; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior lawsuit. Royal Ins. Co. of America, at 807; Farmland Industries v. Morrison-Quirk Grain, 987 F.2d. 1335, 1339 (8th Cir. 1993); Aetna Casualty & Surety Co. v. General Dynamics, 968 F.2d. 707, 711 (8th Cir. 1992); Tyler v. Harper, at 655; Baker v. McCoy, at 384 [both citing Oates v. Safeco Insurance Co. of America, 583 S.W.2d. 713, 719 (Mo.banc. 1979)]; James v. Paul, 49 S.W.3d. 678, 682 (Mo. 2001).

Here, the plaintiffs' RICO claim, as set forth in Count V of the plaintiffs' First Amended Complaint is identical to the RICO claim, as set forth in the plaintiffs' Second Amended Complaint filed in *Schoedinger I*. The allegations regarding the RICO enterprises, and the time-period of the alleged RICO enterprises are identical in both lawsuits. It is undisputed that both this Court and the Eighth Circuit Court of Appeals have dismissed plaintiffs' identical earlier RICO claims, the prior judgment in *Schoedinger I* was a final judgment, and both *Schoedinger I* and the instant lawsuit involve the same RICO cause of action and the same parties.

6

Plaintiffs contend that the current RICO claim is different because 1) it involves benefit claims processed after *Schoedinger I*; and 2) that the decision in *Schoedinger I* regarding plaintiffs' RICO cause of action has been "invalidated" by the United States Supreme Court in Bridge v. Phoenix Bond & Indemnity Co., *supra*.

Firstly, Count VII of the Second Amended Complaint in *Schoedinger I* and Count V of the First Amended Complaint in the instant lawsuit are identical in all respects as to the alleged RICO violations. Plaintiffs simply state that they have evidence of additional benefit claims improperly processed since *Schoedinger I* was ultimately decided. Their argument is that *res judicata* does not bar claims that did not exist when the prior judgment in *Schoedinger I* was entered. However, this precise argument has been repeatedly rejected by both the Eighth Circuit Court of Appeals and Missouri courts. *See*, Misischia v. St. John's Mercy Health Systems, 457 F.3d. 800, 805 (8th Cir. 2006); Chesterfield Village v. City of Chesterfield, 64 S.W.3d. 315, 315-18 (Mo.2002). "Under Missouri law, a prior judgment bars a subsequent claim arising out of the same group of operative facts 'even though additional or different evidence or legal theories might be advanced to support' the subsequent claim." Misischia, at 804 *quoting* Chesterfield Village, at 320; *see also*, Baker v. Bradley, 2007 WL 465626, *2 (E.D.Mo. Feb.8, 2007). Here, plaintiffs have pleaded the identical operative facts in both *Schoedinger I* and the instant lawsuit; i.e. the same alleged RICO conduct forms the basis for the claims asserted in *Schoedinger I* and the instant lawsuit. Thus, plaintiffs' RICO claim remains barred by *res judicata*.

Secondly, the Court finds that the Bridge case does not bar the application of collateral estoppel in this matter. The Bridge case was decided before the appeal in *Schoedinger I* was concluded and prior to the Eighth Circuit's affirmance of this Court's dismissal of the plaintiffs' RICO claim in *Schoedinger I*. In fact, the Eighth Circuit reviewed the Bridge case at length and found it inapplicable based upon the allegations and facts adduced in *Schoedinger I*. The Eighth Circuit upheld this Court's finding that "Defendant's actions, although improper, were clearly explained on the EOB's" and that the plaintiffs had failed to establish a material falsehood, and had failed to prove any intentional deceit by the defendant - all necessary elements of the plaintiffs' RICO claim. Schoedinger I, 557 F.3d. at 878-79.

7

Plaintiffs' RICO claim in the instant lawsuit is identical to the RICO claim set forth in *Schoedinger I*. Thus, once again, the elements of material falsehood and intentional deceit are at issue. This issue was decided against the plaintiffs, even after consideration of the Bridge case.[2] Thus, the Bridge case is inapplicable to the instant RICO claim. The judgment in *Schoedinger I* on plaintiffs' RICO claim is valid, final, and binding on the plaintiffs' current RICO claim. Count V is barred by collateral estoppel.

### Count II, ¶39 and Count III - prayer for relief ¶¶(a), (b), and (c)

In *Schoedinger I*, this Court found that no independent contract exist between the plaintiffs and defendant. Schoedinger, 2006 WL 3803935, *4, *9(Conclusion). Thus, this Court dismissed Count I (breach of contract) in the plaintiffs' original complaint in the instant lawsuit based upon collateral estoppel. *See*, Court Memorandum and Order [15], pg. 2, filed March 11, 2008. Plaintiffs acknowledge that they are barred from relitigating the existence of an independent contract between the parties by omitting Count I in the First Amended Complaint filed in the instant lawsuit.

However, Count II, ¶39 of the First Amended Complaint purports to seek damages based upon the plaintiffs' "own contractual relationship with Defendant"; and subparts (a), (b) and (c) of the plaintiffs' prayer for relief in Count III seek a declaratory judgment that "there is a contractual Agreement between the Plaintiffs and Defendant", that "Defendant has breached that Agreement", and that "Defendant breached its implied duty of good faith and fair dealing". Since this Court has already ruled that no independent contract existed between the plaintiffs and the defendant during the relevant time-period, these assertions are barred by *res judicata* and collateral estoppel. Thus, ¶39 of Count II and subparts (a), (b) and (c) of the prayer for relief in Count III of the First Amended Complaint will be stricken.

---

[2]Plaintiffs filed a *writ of certiorari* arguing that the Eighth Circuit's ruling on the RICO claim was contrary to Bridge. The United States Supreme Court denied the petition. Schoedinger, 130 S.Ct. 257 (Oct. 5, 2009).

## Count II and Count III as to benefit claims covered by ERISA

Plaintiffs do not contest that this Court's prior rulings in *Schoedinger I* and Court Order [15] in the instant lawsuit (and the Eighth Circuit's affirmance of this Court's ruling that ERISA preempts state law causes of action as to all benefit claims covered by ERISA) bar the relitigation of the plaintiffs' state law causes of action for the benefit claims covered by ERISA. Thus, Counts II and III are dismissed as to any and all benefit claims covered by ERISA.

## Count VIII - Tortious Interference with a Business Expectancy

Plaintiffs allege that "[t]his action is based upon the business relationship between a physician **[plaintiffs]**, the healthcare insurer **[defendant]**, and their patient/insured. The fundamental premise of the relationship is that, provided the physician follows the insurer's claims filing procedures, the insurer agrees to pay the physician the insured's benefits under the health insurance policy in a timely manner, for the covered, medically necessary services rendered by the physician to the insurer's insured **[the plaintiffs' patients]** (hereinafter the `Agreement')." Plaintiffs' First Amended Complaint [30], ¶8. Plaintiffs further specifically allege, as the basis for their tortious interference with a business expectancy claim in Count VIII of their First Amended Complaint, the following:

> "80. Plaintiffs offered their services to patients, and patients contractually agreed to pay to Plaintiffs for their services.
>
> 81. Patients of Plaintiffs had contractual rights under the patient's health insurance policy for payment for covered, medically necessary services rendered by Plaintiffs.
>
> 82. Plaintiffs, pursuant to the rendering of covered, medically necessary services to insured patients, had a valid business expectation that Plaintiffs would be paid usual, customary and reasonable amounts by the insured patient's health insurance policy in a timely manner, for said covered, medically necessary services rendered by the physician to the insured.
>
> 83. Defendant, as the administrator of insured patient's health insurance, had knowledge of this valid business expectancy for Plaintiffs to receive prompt and full payment for covered, medically necessary services rendered by the physician to the insurer's insured.
>
> 84. Defendant interfered with this expectancy of payment for medical services performed by Plaintiffs by actions including, but not limited to, Defendant's persistent pattern of discounting claims, `down coding' claims, `bundling' of claims, in the delaying the processing of claims to deny

timely and full payment to Plaintiffs of sums due and owing."
Plaintiffs' First Amended Complaint [30].

Defendants first contend that Count VIII must be dismissed in its entirety for failure to state a claim because 1) there is no allegation that any of the plaintiffs' patients (defendant's insured) breached or terminated any contractual relationship with the plaintiffs; and 2) Missouri law does not recognize a claim for tortious interference where the defendant is a party to the contractual or business relationship with which it is alleged to have interfered. Plaintiffs contend that pursuant to *Schoedinger I*, there is no contract between defendant and plaintiffs, therefore, defendant cannot assert that it is a party to the business relationship plaintiffs allege with which defendant interfered.

Under Missouri law, a tortious interference claim requires that a plaintiff prove: 1) a contract or a valid business expectancy; 2) defendant's knowledge of the contract or relationship; 3) intentional interference by the defendant inducing or causing a breach of contract or relationship; 4) absence of justification; and 5) damages resulting from defendant's conduct. Cole v. Homier Distributing Co., 599 F.3d. 856, 862 (8th Cir. 2010); Healthcare Services of the Ozarks, Inc. v. Copeland, 198 S.W.3d. 604, 614 (Mo.2006); Stehno v. Sprint Spectrum, L.P., 186 S.W.3d. 247, 251 (Mo. 2006); Topper v. Midwest Division, Inc., 306 S.W.3d. 117, 126 (Mo.App. 2010).

Here, the plaintiffs are alleging that defendant tortiously interfered with the plaintiffs' business expectancy with the plaintiffs' patients by not paying plaintiffs in a complete and timely manner the benefits due under the patients' health plans with the defendant. Essentially, plaintiffs are contending that they had a contractual relationship with their patients (defendant's insured) for payment of services rendered; and that such payment was based upon the contractual relationship between the plaintiffs' patients and defendant (pursuant to various health plans administered by the defendant). Thus, their claim is that defendant breached the terms of its contractual relationship with the patients by not paying to plaintiffs, as assignees of the patients, the amounts allegedly due under the patients' health care plans.

Firstly, there is no allegation whatsoever, or any factual basis provided showing that any patient of the plaintiffs breached their contract to pay the plaintiffs or terminated their business relationship with the plaintiffs, especially due to the actions of the defendant. All plaintiffs have alleged is that the defendant breached the terms of its own contracts with the patients/insured to timely pay claims as the administrator of various health plans. Failing to allege whether such actions caused any identified patient to terminate his/her business relationship with the plaintiffs is fatal to the plaintiffs' cause of action. *See*, U.S. Bank National Association v. Parker, 2010 WL 2735661, *4 (E.,D.,Mo. July 9, 2010)(plaintiff's general allegations that defendant interfered with its relationships by directly or indirectly attempting to induce unidentified clients to sever their business relationship with plaintiff too broad and conclusory to maintain a claim for intentional interference with a business expectancy); Williams v. Finck & Associates, 2010 WL 1992242, *8 (E.D.Mo. May 18, 2010)( plaintiff's general assertion that defendant interfered with his relationships with third parties fails because plaintiff did not identify the prospective employers who failed to hire plaintiff because of the defendant's conduct).

Secondly, plaintiffs clearly concede that the instant lawsuit is "based upon the business relationships between the physician, the healthcare insurer, and their patient/insured." As the healthcare insurer[3] (albeit directly or as an agent of the employer/healthcare insurer), defendant is clearly a party to the business relationship which plaintiff contends defendant has interfered with by its actions regarding payment of benefit claims. This business relationship exists absent any direct contract between the parties. Both this Court and the Eighth Circuit found that plaintiffs were assignees of their patients' health plans, and the issue then became whether the parties had a contract independent of the rights assigned to plaintiffs by their patients. Both this Court and the Eighth Circuit found that no independent contract; i.e. no contractual relationship beyond the

---

[3]In *Schoedinger I*, the parties stipulated, and the Court found, that under the health plans fully-insured by defendant, defendant is financially liable for benefits due to plan participants and performs adminstrative and claims processing services. *See, Schoedinger I*, 2006 WL 3803935, *3. As for health plans that are self-funded or self-insured by employers sponsoring the plans, the parties stipulated, and the Court found, that the employers are financially liable for any benefits due and defendant serves only as the plan administrator and claims processor. *See*, *Schoedinger I*, 2006 WL 3803935, *3.

11

rights assigned to plaintiffs by their patients, existed between the plaintiffs and the defendant. The plaintiffs' tortious interference claim is premised upon the defendant's alleged failure to perform as required by the parties' business relationship; i.e. pay for services due under the respective health plans of the plaintiffs' patients. A claim for tortious interference with a business expectancy cannot lie against a party to a contract which creates the business expectancy. Cole v. Homier Distributing Co., at 861 (when a contract alone creates a business expectancy, a plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract)(citations omitted); Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d. 517, 525 (Mo.App. 2007)(the tort of intentional interference with economic relations will not lie where the defendant is a party to the business relationship with which the defendant has allegedly interfered)(citations omitted). Thus, under Missouri law, plaintiffs' claim for tortious interference must fail.[4]

Additionally, ERISA preempts plaintiffs' tortious interference claim as to all benefit claims covered by ERISA. ERISA expressly preempts state laws that "relate to" an ERISA plan. *See*, 29 U.S.C. §1144(a); *see*, Aetna Health v. Davila, 542 U.S. 200, 209 (2004)("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). ERISA remedies preempt "state common law tort and contract actions asserting improper processing of a claim for benefits" under an ERISA plan. Thompson v. Gencare Health Systems, Inc., 202 F.3d. 1072, 1073 (8th Cir. 2000) *citing* Pilot Life Ins., Co. v. Dedeaux, 481 U.S. 41, 43 (1987); *see*, Parkman v Prudential Ins. Co. of America, 439 F.3d. 767, 771-72 (8th Cir. 2006)(finding that the essence of the plaintiff's claim for fraud related to the administration of plan benefits and therefore fell within the scope of ERISA); Kuhl v. Lincoln National Health Plan of Kansas City, Inc., 999 F.2d. 298, 302-03 (8th Cir. 1993). "[C]ourts have consistently opted for preemption in common law tort claims when the essence of the cause of action rests on the denial

---

[4]Plaintiffs' only cited caselaw in support of their tortious interference claim is Hawaii Medical Association v. Hawaii Medical Service Association, Inc., 148 P.3d. 1179 (Haw. 2006). The Court has carefully reviewed this case and finds it inapplicable. Firstly, this case clearly applies Hawaii law, not Missouri law. Secondly, this case does not address the issue present here, i.e., that a tortious interference claim will not lie against a defendant who is a party to the business relationship allegedly with which defendant has interfered.

of benefits." Jones v. Kum and Go, L.C., 2010 WL 1371761, *3 (E.D.Mo. April 7, 2010)(citations omitted).

Plaintiffs contend that their claim survives because the Kuhl case involved the plan itself, and not the plan administrator. This argument is meritless. Kuhl, *supra* made no distinction as to the defendant being the plan itself as opposed to the plan administrator. ERISA preemption to claims based upon the administration of benefits or the alleged improper processing of a claim for benefits applies not only to the plan itself, but to plan administrators. Courts have routinely applied ERISA preemption to plan administrators regarding state law claims based upon the administration of benefits. *See*, Davila, 542 U.S. 200 (2004); Thompson v. Gencare Systems, *supra.*; Hull v. Fallon, 188 F.3d. 939, 944 (8th Cir. 1999)(*citing* Kuhl, *supra.*); Jones v. Kum and Go, L.C., 2010 WL 1371761, *3-*4 (concurring with other courts that a claim for tortious interference with contractual relations is essentially a claim for denial of benefits and preempted by ERISA); *see also*, State Board of Registration for the Healing Arts v. Fallon, 41 S.W.3d 474, 478 (finding that ERISA preempts state laws that interfere with employee benefit structure or their administration)(*citing* Thompson, *supra.*).

Plaintiffs' tortious interference cause of action concerns the administration of benefits under the health plans of plaintiffs' patients. Thus, to the extent that those benefit claims are covered by ERISA, such claims are preempted and dismissed.

In light of the above-referenced findings, the Court will dismiss with prejudice the following portions of the plaintiffs' First Amended Complaint: Count V (RICO); ¶39 of Count II and subparts (a), (b), and (c) of the prayer for relief as contained in Count III, Counts II and III to the extent that they apply to benefit claims covered by ERISA, and Count VIII (tortious interference with a business expectancy).

Accordingly,

**IT IS HEREBY ORDERED** that defendant United Healthcare of the Midwest's motion to dismiss [31] be and is **GRANTED** as set forth above.

Dated this  12th   day of January, 2011.

                                                      UNITED STATES DISTRICT JUDGE